IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANGELA V.,[1]                                      No. 6:19-cv-0836-HZ

              Plaintiff,                          OPINION & ORDER

      v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.


Kevin S. Kerr
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293

        Attorney for Plaintiff

Scott Erik Asphaug
Acting Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Katherine Watson
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       Plaintiff Angela V. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

       Plaintiff applied for DIB on October 15, 2015, alleging an onset date of March 30, 2014. Tr. 40.[2] Her application was denied initially and on reconsideration. Tr. 78, 95.

       On January 29, 2018, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 40. On May 23, 2018, the ALJ found Plaintiff not disabled. Tr. 51. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

       Plaintiff alleges disability based on fibromyalgia, severe depression, prolactinoma, chronic fatigue, stomach issues, and migraines. Tr. 197. At the time of the alleged onset date, she was 47 years old. Tr. 50. She has at least a high school education and past relevant work experience as a customer complaint clerk, social services aide, and administrative clerk. *Id.*

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 12.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 140-41.

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other

work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(e)-(f). If the Commissioner meets their

burden and proves that the claimant can perform other work that exists in the national economy,

then the claimant is not disabled. 20 C.F.R. § 404.1566.

### THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after her alleged onset date. Tr. 42. Next, at steps two and three, the ALJ determined that

Plaintiff has the following severe impairments: "fibromyalgia, chronic fatigue syndrome,

cervical degenerative disease, obesity, anxiety disorder, depression, and posttraumatic stress

disorder." *Id.* However, the ALJ determined that Plaintiff's impairments did not meet or

medically equal the severity of a listed impairment. Tr. 43. At step four, the ALJ concluded that

Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R.

§ 404.1567(b) with the following limitations:

> occasionally lift and carry up to 20 pounds; frequently lift and carry 10 pounds; sit
> for six hours in an eight hour day; stand or walk in combination for up to six hours
> in an eight hour day; and push and pull as much as she can lift and carry. She can
> occasionally reach overhead bilaterally. She must never work at unprotected
> heights, around moving mechanical parts, nor should she be required to operate a
> motor vehicle for commercial purposes. She is limited to simple routine tasks;
> simple work related decisions; and occasional interaction with supervisors,
> coworkers, and the public. The claimant's time off task can be accommodated by
> normal breaks.

Tr. 44. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past

relevant work. Tr. 50. But at step five, the ALJ found that there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, such as "production assembler,

router, and bottle packer." Tr. 50-51. Thus, the ALJ concluded that Plaintiff is not disabled. Tr.

51.

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff argues the ALJ erred by: (1) rejecting her subjective symptom testimony; (2) failing to consider the lay witness statement submitted by her spouse; (3) rejecting the medical opinion evidence; and (4) failing to resolve a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles*.

**I.    Subjective Symptom Testimony**

Plaintiff argues the ALJ improperly discounted her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship

between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Here, the ALJ summarized Plaintiff's testimony as follows:

[Plaintiff] testified that she experiences symptoms of fibromyalgia that cause a "fibro fog" that makes it difficult for her to focus, concentrate, and stay on task. She stated that she experiences widespread body pain that is similar to the flu, pain, and difficulty completing grooming and other daily activities. She testified that sitting is uncomfortable due to pain and when she was working, she was fatigued all the time.

[Plaintiff] testified that depression causes suicidal ideation, social isolation, anxiety, and tearfulness that interfere with her ability to live life. She stated that the combination of fibromyalgia and depression caused her to miss work due to suicidal thoughts, impulsiveness and not wanting to participate in life. She testified that she has anxiety and symptoms of posttraumatic stress disorder (PTSD) that affect her ability to concentrate due to nervousness, rapid heartbeat, dry mouth, hyperventilation, and upset stomach such that she would avoid meeting at work.

[Plaintiff] testified that she has chronic pain in her neck and hands because of cervical spine symptoms. She stated that this also causes difficulty sleeping th[r]ough the night. She experiences five to six migraine headaches per month, down from five to sixteen a month. She testified that the headaches became less frequent after she started medication but they still last three to four days each. The claimant testified she starts having visual hallucinations and she has to avoid light, loud noises, and television. She stated she is not able to work when she has a migraine and she has carpal tunnel syndrome that affects her ability to type and write.

[Plaintiff] testified that she underwent large intestine removal due to dump syndrome causing her to use the facilities almost immediately after she eats and she is unable to have a 30-minute lunch break because she has to eat slowly and deal with urgency.

Tr. 44-45.

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" and did not identify evidence of malingering. Tr. 45. However, the ALJ found that Plaintiff's symptom testimony was not consistent with the record. *Id*.

///

///

A.      **Fibromyalgia**

The ALJ rejected the severity of Plaintiff's testimony related to her fibromyalgia because her "condition" purportedly improved with treatment modalities. Tr. 46. Evidence of effective treatment may support an ALJ's rejection of symptom allegations. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"). Here, however, the ALJ erred by isolating a few examples of symptom improvement and ignoring "the many others that indicated continued, severe impairment." *Holohan*, 246 F.3d at 1207. The ALJ's failure to consider the longitudinal record is particularly problematic given that "the symptoms of fibromyalgia 'wax and wane,'" such that those suffering from it commonly experience "bad days and good days." *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017) (quoting Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869, at *6 (July 25, 2012)).

The ALJ found Plaintiff's fibromyalgia had been effectively treated because Plaintiff "reported taking Pilates and yoga three times a week." Tr. 46. Plaintiff's participation in Pilates, however, is based on a single July 2012 treatment note. Tr. 540. Plaintiff alleges she became disabled in March 2014, nearly 2 years after Dr. Brandt noted that she reported taking Pilates classes three times a week. Because there is no evidence that Plaintiff was doing Pilates during the relevant period, the ALJ erred in finding Plaintiff's fibromyalgia was effectively treated on that basis. *See Carmickle*, 533 F.3d at 1165 (noting evidence that predates the alleged onset of disability is of "limited relevance") (citation omitted).

The record does indicate, however, that Plaintiff occasionally participated in yoga during the relevant period. *See, e.g.*, Tr. 772, 776, 935. Indeed, Plaintiff's treating providers recommended she engage in "regular exercise with slow, interval increases" to treat her

fibromyalgia. Tr. 445, 457, 586, 640, 654, 817; *see also* Tr. 566 (informing Plaintiff that

"exercise has been shown in studies to be as effective as medication" in treating fibromyalgia).

Physician Assistant ("PA") Kelly Boeing advised Plaintiff that "mat work such as yoga" was

particularly appropriate "on days she is tired." Tr. 944. The ALJ cited a single September 2016

treatment record detailing that "[y]oga has helped fibro" to support his finding that Plaintiff's

fibromyalgia improved with treatment. Tr. 46 (citing Tr. 935). However, the ALJ's reliance on

this single notation is unreasonable given that Plaintiff also reported at that same appointment

that she was experiencing weakness, fatigue, back and neck pain, painful and stiff joints,

numbness, sleep problems, and concentration and memory issues. Tr. 935, 937-38; *see also*

*Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (symptoms of fibromyalgia commonly

include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a

pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this

disease"). Thus, Plaintiff's report that yoga "helped" her fibromyalgia does not indicate, as the

ALJ concluded, that her fibromyalgia had been effectively treated.

The ALJ also found Plaintiff's report in June 2017 that she "was able to walk a 5K

without an increase in pain" also indicated that her fibromyalgia symptoms had been effectively

treated. Tr. 46 (citing Tr. 969). However, the ALJ failed to consider that Plaintiff also reported

that she "was tired and in bed for about six days after" the walk. Tr. 915; *accord* Tr. 944

(Plaintiff's husband reporting that when she "overdoes it" with exercise, "he cannot even hug her

due to the severity of her aching and pains"). A claimant's ability to sporadically complete

minimal physical activities is insufficient to reject the claimant's allegations of pain. *Vertigan v.*

*Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). As the Ninth Circuit has noted, "[a] patient may do

these activities despite pain for therapeutic reasons, but that does not mean she could concentrate

on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Id.* Accordingly, Plaintiff's ability to walk a 5K that left her exhausted and bedridden for six days does not indicate that her fibromyalgia was effectively treated.

The ALJ further found that Plaintiff's early discharge from physical therapy in October 2017 "suggests that her condition had improved with home exercise." Tr. 46 (citing Tr. 968). Again, the ALJ's interpretation is unreasonable when viewing the evidence as a whole and considering the waxing and waning nature of fibromyalgia. Plaintiff's discharge from physical therapy so that she could continue her exercise program at home does not indicate that Plaintiff's fibromyalgia improved to the point where it no longer caused her widespread body pain, "fibro fog," or the inability to consistently function from day-to-day. Tr. 64, 218. Plaintiff's early discharge from physical therapy was not a clear and convincing reason to reject her symptom testimony.

The ALJ next rejected Plaintiff's fibromyalgia symptoms because the "musculoskeletal examinations of record are not indicative of disabling rheumatological impairment, inability to ambulate efficiently, or active autoimmune disease process." Tr. 46. The ALJ's finding in this regard evinces a fundamental misunderstanding of fibromyalgia. As noted by the Ninth Circuit, fibromyalgia is unique in that:

> [T]hose suffering from it have muscle strength, sensory functions, and reflexes that
> are normal. Their joints appear normal, and further musculoskeletal examination
> indicates no objective joint swelling. Indeed, there is an absence of symptoms that
> a lay person may ordinarily associate with joint and muscle pain. The condition is
> diagnosed entirely on the basis of the patients' reports of pain and other symptoms.
> There are no laboratory tests to confirm the diagnosis.

*Revels*, 874 F.3d at 656 (internal citations and quotation marks omitted). Therefore, the ALJ's reliance on Plaintiff's musculoskeletal examinations was not a clear and convincing reason to reject her fibromyalgia symptoms. *See Benecke*, 379 F.3d at 594 (holding the ALJ erroneously

rejected the claimant's fibromyalgia "by effectively requiring objective evidence for a disease that eludes such measurement.") (citation omitted).

Finally, the ALJ discounted Plaintiff's fibromyalgia symptoms because "[n]o treating or examining physician has indicated restrictions that preclude all work related activity due to symptoms of fibromyalgia." Tr. 46. Contrary to the ALJ's assertion, however, Plaintiff's primary care physician since 2011, Dr. Gary Brandt, opined that Plaintiff's concentration, persistence, and pace is seriously limited by her fibromyalgia; the stress of even simple, routine work would exacerbate her symptoms; and she would likely miss two or more workdays per month due, in part, to flareups of her fibromyalgia symptoms. Tr. 993-94; *see also* Tr. 74. The Court therefore concludes that the ALJ erred in rejecting Plaintiff's symptom testimony related to her fibromyalgia.

### B.     Chronic Fatigue Syndrome

The ALJ rejected Plaintiff's symptoms related to her chronic fatigue syndrome ("CFS") because her "symptoms improved with treatment and resulted in increased functioning overall." Tr. 48. As discussed, evidence of effective treatment may support an ALJ's rejection of symptom allegations. *Warre*, 439 F.3d at 1006. As was the case with Plaintiff's fibromyalgia symptoms, however, the ALJ's finding that Plaintiff's CFS had been effectively treated is not supported by substantial evidence.

The ALJ concluded that Plaintiff's CFS had "dissipated by December 7, 2016" based on a single treatment record noting that "[f]atigue is denied." Tr. 47 (citing Tr. 793). But Plaintiff's CFS is well documented throughout the record, including numerous complaints of fatigue made after her CFS had purportedly dissipated in December 2016. *See, e.g.*, Tr. 347, 433, 441, 446, 855, 913, 918, 932, 939, 956, 981, 991. For example, Plaintiff complained of excessive fatigue at

a March 2017 appointment with PA Boeing. Tr. 918. Additionally, a May 2017 physical therapy note lists "chronic fatigue syndrome" as one of Plaintiff's co-morbidities, and a July 2017 treatment record lists Plaintiff's "fatigue" as an active "problem" requiring treatment. Tr. 913, 981. Dr. Brandt's January 2018 medical opinion details that Plaintiff's symptoms include CFS and chronic fatigue. Tr. 991. Thus, the ALJ's finding that Plaintiff's CFS had "dissipated" by December 2016 is not supported by substantial evidence.

The ALJ similarly found Plaintiff's CFS had been effectively treated because she "walked a 5K, reported that she walks her dog every day, walks a mile a day, and she walks on a treadmill 15 minutes a day." Tr. 47-48 (citing Tr. 969, 981). As discussed, Plaintiff's ability to walk a 5K that left her exhausted and bedridden for six days was not a clear and convincing reason to reject her symptom testimony. Moreover, Plaintiff reported that walking her dog caused her an increase in pain that precipitated her need for physical therapy. Tr. 981. Plaintiff reported walking on the treadmill for 15 minutes a day, but she also described dragging her left leg while doing so. *Id.* Notably, Plaintiff did not allege that her fatigue precluded her from engaging in all physical activity; instead, she testified that her fatigue was primarily related to her widespread pain and made it difficult for her to consistently function on a day-to-day basis. Tr. 64, 218, 221. As noted, "the mere fact that a plaintiff has carried on certain daily activities, such as . . . limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan*, 260 F.3d at 1050. Accordingly, the ALJ's finding that Plaintiff's CFS improved with treatment is not supported by substantial evidence and was, therefore, not a clear and convincing reason to reject Plaintiff's symptom testimony.

///

///

C.      **Mental Health Impairments**

The ALJ rejected the severity of Plaintiff's symptoms related to her mental health impairments based on her course mental health treatment. Tr. 48-49. Besides briefly summarizing the treatment record and asserting that "the combination of [Plaintiff's] diagnoses could reasonably cause limitations but not to the extent that she has alleged," the ALJ never specified what symptom allegations were undermined by Plaintiff's course of mental health treatment. Tr. 48. As noted, "[a]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" *Brown-Hunter*, 806 F.3d at 489. Here, the ALJ did just that by concluding Plaintiff's "allegations are not consistent with the evidence to the extent that her capacity is so limited she is precluded from performing . . . work related activity . . . consistent with the residual functional capacity[.]" Tr. 49. Because the ALJ failed to "specifically identify the testimony" he found unsupported by the record and did not "explain what evidence undermines the testimony," the Court finds that the ALJ erred in rejecting Plaintiff's mental health symptoms. *Holohan*, 246 F.3d at 1208 (citation omitted).[3]

---

[3] The Commissioner also argues that Plaintiff's symptom testimony is inconsistent with the long-standing duration of her fibromyalgia, depression, and chronic fatigue. Def. Br. 5-6, ECF 14 (noting Plaintiff reported a history of suicide attempts since the age of thirteen, was diagnosed with fibromyalgia in 2013, and reported fatigue dating back to 2002). The Commissioner further contends that Plaintiff's testimony is inconsistent with a November 2015 treatment record detailing that Plaintiff had "started to look for a new job, and intended to apply for a volunteer position" at the library. Tr. 853. The ALJ, however, did not reject Plaintiff's testimony for these reasons. As such, the Commissioner's arguments are post-hoc rationales that cannot form the basis for affirming the ALJ's decision. See *Brown-Hunter*, 806 F.3d at 492 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)) ("A clear statement of the agency's reasoning is necessary because [the Court] can affirm the agency's decision to deny benefits only on the grounds invoked by the agency").

## II.     Lay Witness Testimony

Plaintiff argues the ALJ erred by failing to consider her husband Jeffrey V.'s third-party function report. Tr. 226-33. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. Germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1054).

The Commissioner concedes the ALJ failed to consider Jeffrey V.'s report, but argues the error was harmless. An ALJ's failure to provide germane reasons for rejecting lay testimony is harmless error where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony and the lay witness has not described limitations beyond those alleged by the claimant. *Molina*, 674 F.3d at 1121-22. Because the ALJ did not give legally sufficient reasons for rejecting Plaintiff's testimony, the ALJ's failure to consider Jeffrey V.'s lay testimony was not harmless.

## III.    Medical Opinion Evidence

Plaintiff argues the ALJ erred by giving reduced weight to the medical opinions of treating physician Dr. Gary Brandt and treating psychiatrist Dr. Jennifer Metheny. Social Security law recognizes three types of physicians: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). More weight should typically be given to an examining physician than to a non-examining physician. *Id.* "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Id.* (quoting *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When

determining how much weight to give a medical opinion, the ALJ should consider the nature and extent of the physician's examining or treating relationship with the claimant, supportability of the opinion, consistency with the record as a whole, the specialization of the physician, and other relevant factors. 20 C.F.R. § 404.1527(c).

### A.    Dr. Gary Brandt

On January 24, 2018, Dr. Brandt completed a medical opinion form supplied by Plaintiff's counsel. Tr. 990-94. He noted that he had been treating Plaintiff since 2011, and that her diagnoses included major depressive disorder and fibromyalgia. Tr. 990. Dr. Brandt opined that Plaintiff could: (1) lift less than ten pounds; (2) stand/walk thirty minutes at a time for a total of six hours in an eight-hour workday; (3) sit one hour at a time for a total of six hours in an eight-hour workday; (4) never climb, balance, stoop, kneel, crouch, or crawl; and (4) occasionally finger, feel, and reach overhead and shoulder height. Tr. 991-92. He further opined that Plaintiff was markedly limited in her ability to concentrate, persistent and maintain pace; required unscheduled breaks during the workday due to exacerbations of her mental health symptoms; and would miss two or more workdays per month due to flare-ups of her fibromyalgia and depression. Tr. 993-94.

The ALJ gave Dr. Brandt's opinion "little weight," finding it "inconsistent with [Plaintiff]'s level of activity." Tr. 48. Inconsistency between a physician's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ found Dr. Brandt's opinion undermined by Plaintiff walking a 5K, "walking her dog, being able to walk up to a mile, and us[ing] a treadmill for 15 minutes each day." *Id.* As discussed, Plaintiff was bedridden for six days after she walked a 5K, and there is no indication as to how long it took

Plaintiff to complete the 5K or whether she needed to rest frequently to do so. Furthermore, Plaintiff's ability to walk up to a mile and walk on a treadmill for 15 minutes while dragging her left foot is not contrary to Dr. Brandt's opinion that she can walk for 30 minutes at a time before needing a break. Accordingly, Plaintiff's limited walking was not a specific and legitimate reason to give little weight to Dr. Brandt's stand/walk limitation, much less the entirety of his treating source opinion.

### B.    Dr. Jennifer Metheny

On January 15, 2018, Dr. Metheny wrote a letter for Plaintiff's disability hearing. Tr. 989. She noted treating Plaintiff's PTSD and major depressive disorder through "individual psychotherapy services for multiple episodes of care from 08/11/2014 to 12/28/2015, from 10/06/2016 to 12/01/2016, and from 01/12/2018 to present." *Id.* Dr. Metheny opined that Plaintiff would not be able to sustain employment due to "difficulty maintaining attention and concentration, remembering detailed instructions, interacting appropriately and effectively with others[,] accepting and responding appropriately to feedback from a supervisor," and "sustaining the level of consistent activity necessary to adhere to a full time work schedule." *Id.*

The ALJ gave Dr. Metheny's opinion "little weight," finding it "wholly inconsistent with the record, which shows the claimant's mental health conditions improved with consistent and ongoing therapy, DBT skills classes, and prescribed nortriptyline." Tr. 49 (citing Tr. 844-50). The ALJ also found Dr. Metheny's opinion was "inconsistent with her own psychotherapy progress notes that indicate decreased depressive symptoms, increased coping efficacy, and increased hopefulness about the future." *Id.* (citing Tr. 850). Consistency with the record as a whole is a relevant consideration when evaluating medical opinion evidence. 20 C.F.R. § 404.1527(c)(4). Additionally, "conflict between treatment notes and a treating provider's

opinions may constitute an adequate reason to discredit the opinions of the treating physician[.]"
*Ghanim*, 763 F.3d at 1161 (citing *Molina*, 674 F.3d at 1111-12).

Plaintiff argues "Dr. Metheny's notes indicated that Plaintiff continued to make progress and pursue multiple treatment options despite continuing care, not that Plaintiff's mental health symptoms had improved." Pl. Br. 18, ECF 13. The Court agrees. An ALJ satisfies the "substantial evidence" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

Here, the ALJ merely asserted that Dr. Metheny's opinion was inconsistent with her own treatment notes without actually explaining the inconsistency. Without more, and when viewing the record as a whole, the Court fails to see how Plaintiff's reports to Dr. Metheny of decreased depressive symptoms, increased coping efficacy when experiencing triggers associated with past trauma, and hopefulness about the future are inconsistent with Dr. Metheny's opinion that Plaintiff would not be able to sustain employment due to cognitive deficits, difficulty with supervisors, and an inability to sustain consistent activity. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms . . . . [and] with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison*, 759 F.3d at 1017. Therefore, Dr. Metheny's own treatment notes were not a specific and legitimate reason to reject her medical opinion.

Plaintiff further argues that, contrary to the ALJ's finding, her subsequent mental health treatment demonstrates that her depression, anxiety, and PTSD were not resolved by medication and therapy. In March 2018, Psychiatric-Mental Health Nurse Practitioner ("PMHNP") Christopher Tower noted Plaintiff exhibited symptoms of depression and anxiety. Tr. 16-17.[4] The following month, Plaintiff reported her symptoms had "partially improved." Tr. 19. However, she "experienced a significant complication" in June 2018 when she started feeling suicidal. Tr. 22. PMHNP Tower observed "signs of severe depression," and adjusted Plaintiff's medications. Tr. 22-23. The following month, Plaintiff showed "a partial treatment response," but she was still experiencing anxiety and mood irritability. Tr. 28, 30. As the Ninth Circuit has emphasized in the context of mental health issues, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017 (citation omitted). Accordingly, the ALJ's finding that Plaintiff's mental health conditions had improved was neither supported by substantial evidence nor a specific and legitimate reason to reject Dr. Metheny's medical opinion.

## IV.    Step Five

Plaintiff contends the ALJ erred by failing to reconcile a conflict between the Vocational Expert ("VE")'s testimony and the *Dictionary of Occupational Titles* ("DOT"). Specifically, Plaintiff argues that the DOT's "frequent" and "constant" reaching requirements for the jobs the

---

[4] "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Decker v. Berryhill*, 856 F.3d 659, 664 (9th Cir. 2017) (citation omitted).

ALJ found Plaintiff capable of performing at step five conflicts with the VE's testimony that an individual limited to occasional (which is less than frequent and constant) overhead reaching could perform those jobs. DOT 222.587-038 (Router), *available at* 1991 WL 672123; DOT 706.687-010 (Production Assembler), *available at* 1991 WL 679074; DOT 920.685-026 (Bottle Packer), *available at* 1991 WL 687929. "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing *Massachi*, 486 F.3d at 1153-54).

Here, however, the Court need not decide whether the ALJ erroneously failed to reconcile an apparent conflict between the DOT and the VE's testimony. The ALJ's RFC formulation, and thereby the hypothetical posed to the VE that was based on the RFC, was not supported by substantial evidence due to the ALJ's erroneous rejection of Plaintiff's symptom testimony and her treating doctors' medical opinions. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (RFC must include all limitations supported by substantial evidence in the record); *Lingenfelter*, 504 F.3d at 1040 (RFC is not supported by substantial evidence where the ALJ failed to provide legally sufficient reasons for excluding the claimant's limitations). Because an incomplete hypothetical cannot support the VE's testimony, the ALJ could not properly rely on it. *Valentine*, 574 F.3d at 690 (hypothetical presented to the VE is derived from the RFC; to be valid, the hypothetical presented to the VE must incorporate all of a plaintiff's limitations); *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009) (VE testimony is reliable if the hypothetical sets out all the claimant's limitations). Accordingly, the step five finding is not supported by substantial evidence in the record.

## V.    Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison*, 759 F.3d at 1020; *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the Court remands the case and credits the improperly discredited evidence as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.* The "ordinary remand rule" is "the proper course," except in rare circumstances. *Treichler*, 775 F.3d at 1101.

Plaintiff asks the Court to credit the above-described testimony and medical opinion evidence as true and remand this case for immediate payment of benefits. This case, however, is not one with "rare circumstances" justifying that type of remand. Plaintiff's conclusory assertion that the credit-as-true factors are met here is neither persuasive nor well developed. The Court therefore finds the ordinary remand rule is the proper course in this case.

///

///

///

///

///

///

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED

for administrative proceedings.

IT IS SO ORDERED.


DATED:___April 20, 2021_____.


_____

MARCO A. HERNÁNDEZ
United States District Judge